1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

TYLER HULBERT,

Case No. C09-5141BHS-KLS

7
                           Plaintiff,

REPORT AND RECOMMENDATION

8
     v.

9

MICHAEL J. ASTRUE, Commissioner of
Social Security,

Noted for April 16, 2010

10
11
                           Defendant.

12
13
14

15         Plaintiff, Tyler Hulbert, has brought this matter for judicial review of the denial of his

16  application for disability insurance benefits.  This matter has been referred to the undersigned

17  Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

18  authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  After reviewing

19  the parties' briefs and the remaining record, the undersigned submits the following Report and

20  Recommendation for the Court's review.

21

22                        <u>FACTUAL AND PROCEDURAL HISTORY</u>

23         Plaintiff currently is 23 years old.[1] Tr. 82.  He has a high school education and no past

24
relevant work experience. Tr. 76, 405.

25

26

---

[1]  Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION - 1

On November 22, 2004, plaintiff filed an application for disability insurance benefits, alleging disability as of December 31, 1996, due to a number of conditions.[2] Tr. 67, 127-28.  His application was denied initially and on reconsideration. Tr. 67, 81-82, 99, 102.  A hearing was held before an administrative law judge ("ALJ") on July 12, 2007, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's mother and father, and a vocational expert. Tr. 400-455.

On October 25, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part that through June 30, 1998, his date last insured:

(1)     at step one of the sequential disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since December 31, 1996, his alleged onset date of disability;

(2)     at step two, plaintiff had "severe" impairments consisting of a learning disorder and hearing loss;

(3)     at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4)     after step three but before step four, plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain additional non-exertional limitations:

(5)     at step four, plaintiff had no past relevant work; and

(6)     at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 67-77.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 13, 2009, making that decision the Commissioner's final decision. Tr. 5; 20

---

[2]  These include a learning disability involving speech and language, hearing loss, phobias, a tick in his eye and hands, depression, social anxiety, anti-social tendencies, facial and hand abnormalities, dental problems, headaches, genetic problems, vision problems, an arachnoid cyst, and a growth on his pituitary gland and optic nerve. Tr. 127-28.

[3]  The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 2

C.F.R. § 404.981.

On March 16, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#2).  The administrative record was filed with the Court on June 11, 2009. (Dkt. #11).  Plaintiff argues that the ALJ's decision should be reversed, and that this matter should be remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a) additional evidence submitted to the ALJ and to the Appeals Council shows plaintiff to be disabled:

(b) the ALJ erred in not properly considering whether plaintiff had a severe impairment consisting of a genetic syndrome;

(c) the ALJ erred in evaluating the degree of limitation caused by plaintiff's mental impairments;

(d) the ALJ erred in failing to consider whether plaintiff's mental impairments met Listing 112.02 (organic mental disorders); and

(e) the ALJ erred in evaluating the lay witness evidence in the record.

Defendant agrees the ALJ's decision should be reversed, but argues remand is appropriate here for the sole purpose of determining plaintiff's insured status.

For the reasons set forth below, the undersigned agrees with plaintiff that the ALJ erred in determining him to be not disabled, but recommends that while the ALJ's decision should be reversed, this matter should be remanded for further administrative proceedings.  However, the undersigned disagrees with defendant that this matter should be remanded for the sole purpose of determining plaintiff's insured status.  Although oral argument has been requested in this matter, the undersigned finds such argument to be unnecessary here.

<u>DISCUSSION</u>

This Court must uphold the Commissioner's determination that plaintiff is not disabled if

REPORT AND RECOMMENDATION - 3

1  the Commissioner applied the proper legal standard and there is substantial evidence in the

2  record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir.

3  1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as

4  adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v.

5  Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

6  preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

7  Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

8  rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler,

9  749 F.2d 577, 579 (9th Cir. 1984).

10

11  I.    Plaintiff's Insured Status

12         The Social Security Act provides in relevant part that "[e]very individual who . . . is

13  insured for disability insurance benefits," who "has filed [an] application for disability insurance

14  benefits" and "who is under a disability[4] . . . , shall be entitled to" such benefits. 42 U.S.C. §

15  423(a).  Thus, an individual's "insured status is a basic factor in determining if" the individual is

16  "entitled to . . . disability insurance benefits or to a period of disability." 20 C.F.R. § 404.101(a).

17  If an individual is "neither fully nor currently insured, no benefits are payable." Id.  Insurability

18  is determined in accordance with the number of "quarters of coverage" the individual has. See 42

19  U.S.C. § 423(c); 20 C.F.R. § 404.130(a).

20         Specifically, whether an individual has obtained "the required insured status depends on

21  the number of quarters of coverage (QC)" he or she has acquired. 20 C.F.R. § 404.101(a); see

22  also 20 C.F.R. § 401.102 (referring to quarter as calendar quarter, i.e., period of three calendar

23

---

4   The statutory definition of the term "disability" reads in relevant part: "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

REPORT AND RECOMMENDATION - 4

months).  The number of QCs the individual will be "credited with" is "based on the wages" that

individual is paid, as well as any "self-employment income" derived "during certain periods." 20

C.F.R. § 404.101(b).  An individual needs "at least 6 QCs but not more than 40 QCs to be fully

insured," and his or her "fully insured status begins . . . as of the first day of the calendar quarter

in which" the "last needed QC" is acquired. 20 C.F.R. § 404.110(b)(1), (e).

In his decision, the ALJ found plaintiff "**last met the insured status requirements of

the Social Security Act on June 30, 1998**" (Tr. 70 (emphasis in original)), but also discussed

plaintiff's earnings record in regard to that status as follows:

> According to 20 CFR 404.1015, work is excluded from employment if an
> individual under the age of 18 works for a parent.  Work for a corporation is
> not excluded.  Although [the Social Security Administration's] POMS
> [Program Operations Management System] is not binding on me, it is useful
> for determining the policy of the Social Security Administration.  According
> to POMS RS 01901.250, service for a corporation is not considered family
> employment.  The relationship of the employee to the stockholders, directors,
> and officers of the corporation is immaterial.  However, the bona fides of such
> employment must be developed.
>
> The claimant's record of earnings shows that he earned $5,800 in 1994,
> $5,800 in 1995, and $5,800 in 1996. (Exhibit D).
>
> At the hearing, Michelle Hulbert, the claimant's mother, testified that the
> claimant had worked for a company her husband owned when the claimant
> was ten years old.  The claimant emptied trash, cleaned out recycling, and
> swept the floors.  He did that for one year.  The claimant was with her, and
> needed constant supervision when he was with her.  Mr. Hulbert testified that
> the claimant worked one day a week.  The earnings were subsidized.  If the
> testimony of Mr. and Mrs. Hulbert were credited, the claimant was paid over
> $100 a week when he was ten years old for emptying trash cans, emptying ash
> trays, cleaning out recycling, and sweeping the floors.
>
> I recommend that the Social Security Administration investigate whether an
> employer-employee relationship existed to properly credit these payments as
> earnings.

Tr. 67-68.

REPORT AND RECOMMENDATION - 5

1
2
3
4
5
6
7
8
9

Defendant argues that although this matter is now before the Court, no investigation of "the bona fides" of plaintiff's employment has been conducted, meaning that plaintiff's insured status remains unresolved. (Dkt. #21, p. 5).  Because of this, defendant further argues, plaintiff's eligibility to receive disability insurance benefits has not yet been determined, and therefore any decision by the Court to reverse the ALJ's disability determination would not result in any actual payment thereof.  Lastly, defendant asserts the issue of whether plaintiff has sufficient insurance coverage must be remedied before the Court can proceed with this matter and address the merits of the issues plaintiff raises.  The undersigned disagrees.

10
11
12
13
14
15
16

No legal authority has been cited by defendant that requires the Court to remand a Social Security case that properly has been appealed to it without reaching the merits thereof, solely on the basis that questions may surround a claimant's insured status.  As such, it would appear to be wholly within the Court's discretion to make that determination.  Defendant asserts remand just for the purpose of resolving the insured status issue is appropriate given the reasons noted above, but the undersigned finds that assertion to be wholly unpersuasive as well.

17
18
19
20
21
22
23
24
25
26

First, it is not even clear there is really any issue regarding plaintiff's insured status.  As noted above, despite the suspicions he expressed regarding plaintiff's reported employment and his recommendation that the Social Security Administration investigate that issue, the ALJ made an express finding that the insured status requirements had been met. See Tr. 70.  Clearly, had the ALJ felt otherwise, he would have found that those requirements had not been satisfied, and that the matter could proceed no further until the issue had been resolved.  Indeed, the fact that the ALJ only recommended that it be investigated by the Social Security Administration, shows he did not believe that questions regarding plaintiff's insured status needed to be resolved before he could address the five-step sequential disability evaluation process.

REPORT AND RECOMMENDATION - 6

1       Two other related issues defendant raises are equally meritless.  Defendant posits that this

2   unresolved insurance coverage issue calls into question whether the Court even has jurisdiction

3   over this case, as it is not clear whether a final agency decision has been issued.  See 42 U.S.C. §

4   405(g)[5]; see also Udd v. Massanari, 245 F.3d 1096, 1098 (9th Cir. 2001) (judicial review limited

5   to final decision made after hearing).  Nothing in the language of 42 U.S.C. § 405(g), however,

6   at all indicates that an individual's insured status is a relevant consideration in determining if an

7   agency decision is final.  Nor do the Commissioner's own regulations make this a requirement

8   for establishing to finality of its decisions.  See 20 C.F.R. § 404.900(a) (providing that claimants

9   have right to judicial review after all necessary administrative steps to complete administrative

10   review process – i.e., initial determination, reconsideration of that determination, hearing before

11   ALJ, and review by Appeals Council – have been completed).

12       Finally, defendant asserts in relevant part as follows:

13       Plaintiff's [disability insurance benefits] application is also missing from the
        file.  Although Plaintiff claims that he does not "expect that there will be a
14       dispute about the fact of the application," this application and its contents are,
        in fact, critical to resolving the coverage issue. Pl.'s Br. [plaintiff's brief] at
15       [p.] 3.  The application contains assertions of fact that address Plaintiff's
        eligibility.  Notably, a case development sheet indicates that the field office
16       had serious concerns about the coverage issue and Plaintiff's . . . "insured
        status" at the outset, but proceeded to process the case without adequately
17       resolving these concerns. Tr. 372.  Continuing to proceed with this case in
        federal court, without resolving the coverage issue, could result in paying
18       benefits to an individual who does not have coverage or "insured status" . . .

19   (Dkt. #21, pp. 5-6 (internal footnote omitted).  However, defendant again fails to show there is

20   anything in the missing application, which may require the Court to remand this matter prior to

21   considering all of the issues raised by plaintiff in this matter.  In addition, the fact that the matter

---

[5] That statutory provision provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow."

REPORT AND RECOMMENDATION - 7

was processed at the initial administrative determination level despite the above concerns, further indicates that final resolution of plaintiff's insured status was not required prior to the resolution of other potential issues regarding plaintiff's application.

Accordingly, rather than remanding this matter solely to resolve any remaining issues with plaintiff' insured status, the more sensible and appropriate thing to do is to address all of the issues plaintiff has raised, and then, as noted herein, remand this matter for further consideration of all unresolved issues that remain.  To do otherwise likely would only serve to delay this matter further, if on remand the Commissioner merely confirms the ALJ's determination that all insured status requirements had been met.  In other words, if this indeed is the determination eventually made by the Commissioner, the parties would be right back before the Court addressing the same issues plaintiff now raises.  The undersigned thus finds the Court and the parties are better served by addressing all of those issues now.

II.     Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  As noted above, plaintiff's date last insured was June 30, 1998. Tr. 81.  Therefore, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

III.    Additional Evidence Submitted to the ALJ and to the Appeals Council

Plaintiff states that on July 10, 2007, his counsel faxed additional documents to the ALJ,

REPORT AND RECOMMENDATION - 8

consisting primarily of medical opinion source evidence and lay witness statements. See Tr. 18-20, 29-60; (Dkt. #14-2).  Plaintiff further states that because the list of exhibits accompanying the ALJ's decision listed only some of the faxed documents (see Tr. 2-3), plaintiff's counsel again submitted those documents to the Appeals Council, arguing that if the ALJ had this evidence, he committed error by not discussing it in his decision. See Tr. 15-16.  Plaintiff also notes that while the Appeals Council found the additional evidence did not provide a basis for changing the ALJ's decision (see Tr. 6), only two of the documents plaintiff's counsel submitted were marked as exhibits (see Tr. 8).

Plaintiff argues this matter should be remanded for further administrative proceedings on the basis that not all of the above documents were properly considered.  The undersigned agrees. Defendant does not contest plaintiff's assertion that those documents were faxed to the ALJ prior to the issuance of his decision in this matter, and to the Appeals Council prior to its denial of the request for review.  As plaintiff points out, when additional evidence is submitted for the first time to federal court, to justify remand, the claimant must show both that the evidence is "new" and "material" to determining his or her disability, and that he or she "had good cause for having failed to produce" it earlier. Mays v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

The undersigned, however, agrees with plaintiff that he is not subject to this burden of proof here.  That is because plaintiff's counsel did submit the above-noted documents not only to the Appeals Council, but also to the ALJ prior to the issuance of his decision.  Thus, no showing of newness, materiality or good cause was required.  In addition, it is clear that to the extent the ALJ received those documents – and there is no indication plaintiff's counsel failed to properly fax them to the proper destination – but failed to list all of them in the exhibit list accompanying his decision, there is at least a question as to whether he in fact considered them all.  Indeed, as

discussed above, it does appear that not all of the documents were addressed therein.

As the faxed documents consist of medical opinion source and lay witness evidence that concern plaintiff's symptoms, impairments and limitations, it is significant probative evidence the ALJ was required to consider and address. See Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (ALJ must explain why significant probative evidence has been rejected); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (ALJ must provide clear and convincing reasons for rejecting uncontradicted opinions of treating or examining physician, and specific and legitimate reasons for rejecting those that are contradicted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (lay witness evidence regarding claimant's symptoms is competent evidence ALJ must take into account and give germane reasons for rejecting).  The ALJ's failure to consider those documents was error.

IV.    The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe". 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

REPORT AND RECOMMENDATION - 10

1152, 1159-60 (9th Cir. 2001); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1998).  The step

two inquiry described above, however, is a *de minimis* screening device used to dispose of

groundless claims.  <u>Smolen</u>, 80 F.3d at 1290.

      In this case, as noted above, the ALJ found plaintiff had severe impairments consisting of

a learning disorder and hearing loss. Tr. 70.  The ALJ further found that plaintiff's complaints of

headaches did not constitute a severe impairment. <u>Id.</u>  Plaintiff does not challenge these findings,

but instead argues that the ALJ erred in failing to find he had a severe impairment consisting of a

"genetic syndrome," which reasonably could be expected to cause the limitations reported by the

lay witnesses in the record. (Dkt. #14, p. 11).  The undersigned agrees the ALJ erred in failing to

properly address the medical opinion source evidence in the record concerning the existence of a

genetically-based impairment, but not necessarily in not finding it to be severe.

      The objective medical evidence in the record – upon which the ALJ must solely base his

step two determination[6] – is inconclusive as to whether plaintiff actually has what he labels a

genetic syndrome, and, if so, as to what that syndrome actually consists.  In early May 1990,

Lewis B. Almaraz, M.D., opined that plaintiff might have "a genetic syndrome given his facial

features," most likely consisting of "a genetic microphalic problem." Tr. 386.  Later that month,

---

[6] Although the ALJ must take into account a claimant's pain and other symptoms at step two (<u>see</u> 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.*  If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed.  Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA [substantial gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added).

REPORT AND RECOMMENDATION - 11

he commented that while plaintiff might have a Dubowitz syndrome, Opitz-Frias syndrome "or other undefined genetic disorder," he in fact was "not sure of his diagnosis." Tr. 383.

In early March 1998, Richard W. Seaman, M.D., assessed plaintiff with a "[c]ongenital disorder, compatible with some of the features of Treacher-Collins." Tr. 207.  In early April 1998, though, Mary Beth Dinulos, M.D., another examining physician, stated that her clinical findings – which consisted of "bilateral sensorineural hearing loss, distinctive facial features" and "small hands with brachydactyly" – did "not appear to be consistent with a diagnosis of Treacher-Collins syndrome," nor did she "recognize a well described syndrome that would encompass all of" those findings. Tr. 287.  In early June 2003, Arshard R. Muzaffer, M.D., opined that plaintiff had "many dysmorphic features which" were "suggestive of a syndromic diagnosis," but which had "not yet been determined." Tr. 319.

In early September 2004, Phillip F. Chance, M.D., assessed plaintiff with "a history of sensorineural hearing loss, brachydactyly and developmental issues." Tr. 282.  In addition, Dr. Chance noted that plaintiff had "mildly dysmporphic facial features, suggesting" he might "have a brachydactyly syndrome that could be either uniquely his own or one which" no medical source had "been able to recognize." Id.  Dr. Chance also felt it was "unlikely" plaintiff had Treacher Collins syndrome or "one of the trichorhinophalangeal syndromes." Id.

In early September 2006, plaintiff's treating physician, Daniel G. Miller, M.D., stated he thought it was "fairly clear" plaintiff had "a syndrome of likely genetic etiology," as "opposed to a syndrome caused by an error in development." Tr. 378.  In late June 2007, Dr. Miller stated in a letter that "a specific genetic syndrome" that could account for plaintiff's "problems" could not be identified, but that plaintiff's physical examination, past medical history and family history suggested his "disability" was "genetic in origin." Tr. 29.  Thus, while most of the above medical

REPORT AND RECOMMENDATION - 12

sources suspected the cause of plaintiff's impairments and limitations were genetic in origin, no specific cause in fact was identified. As such, although it is not clear that this evidence by itself would be sufficient to satisfy the step two severity requirement, remand for further consideration thereof is appropriate as the ALJ never expressly discussed it.

V.      Degree of Limitation Caused by Plaintiff's Mental Impairments

To evaluate the severity of a claimant's mental impairments, the Commissioner must "follow a special technique at each level in the administrative review process." 20 C.F.R. § 404.1520a(a). Under this technique, the Commissioner first determines whether the claimant has a medically determinable impairment. 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, then the Commissioner rates the "degree of functional limitation" resulting from that impairment. 20 C.F.R. § 404.1520a(b)(2).

Rating the degree of functional limitation involves consideration of four functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c). If a claimant's degree of limitation in the first three areas is rated "none" or "mild" and "none" in the fourth area, then the claimant's mental impairment generally is considered not severe, unless evidence in the record otherwise indicates there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). At the initial and reconsideration levels of the administrative review process, "a standard document" is completed to record how the above technique was applied. 20 C.F.R. § 404.1520a(e). At the ALJ hearing level, documentation of the technique is done in the decision itself. Id.

Plaintiff argues that although the ALJ found he had a mental impairment, i.e., a learning disorder, he erred by not then following the special technique for rating the degree of functional

REPORT AND RECOMMENDATION - 13

limitation caused thereby. <u>See</u> Tr. 70.  The undersigned agrees the ALJ erred by not documenting

that technique in his decision, but finds this error to be harmless.  An error is harmless only if it

is "inconsequential" to the ALJ's "ultimate nondisability determination." <u>Stout v. Commissioner,</u>

<u>Social Security Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006).

    As discussed above, the purpose of following the special technique is to determine the

level of severity of the alleged mental impairment.  Here, however, the ALJ found plaintiff's

learning disorder was a severe impairment.  Thus, even if the ALJ had documented the special

technique form in his decision, it would have had no impact on the ALJ's ultimate nondisability

determination, given that severity finding.  Accordingly, the undersigned finds the ALJ's error

here provides no basis for remand in this matter.

VI.    <u>The ALJ's Step Three Determination</u>

    At step three of the sequential disability evaluation process, the ALJ must evaluate the

claimant's impairments to see if they meet or medically equal any of the impairments set forth in

the Listings. 20 C.F.R § 404.1520(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  If

any of the claimant's impairments meet or medically equal a listed impairment, he or she is

deemed disabled. <u>Id.</u>  The burden of proof is on the claimant to establish he or she meets or

medically equals any of the impairments contained in the Listings. <u>Tacket</u>, 180 F.3d at 1098.

However, "[a] generalized assertion of functional problems is not enough to establish disability

at step three." <u>Id.</u> at 1100 (citing 20 C.F.R. § 404.1526).

    A mental or physical impairment "must result from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and laboratory

diagnostic techniques." 20 C.F.R. § 404.1508.  It must be established by medical evidence

"consisting of signs, symptoms, and laboratory findings." <u>Id.</u>; <u>see also</u> SSR 96-8p, 1996 WL

REPORT AND RECOMMENDATION - 14

374184 *2 (determination conducted at step three must be made based on medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, medically equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (for claimant to qualify for benefits by showing his unlisted impairment, or combination of impairments, is equivalent to listed impairment, he or she must present medical findings equal in severity to all criteria for most similar listed impairment). However, "symptoms alone" will not justify a finding of medical equivalence. Id. The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or medically equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to medically equal listed impairment).

In this case, as noted above, the ALJ found plaintiff did not a have an impairment or a

REPORT AND RECOMMENDATION - 15

combination of impairments that met or medically equaled any of those contained in the Listings. Tr.70. Plaintiff argues the ALJ erred in failing to consider whether his mental impairments met the criteria of Listing 112.02 (organic mental disorders). That Listing provides in relevant part:

> 112.02 Organic Mental Disorders: Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented persistence of at least one of the following:
>
> 1. Developmental arrest, delay or regression; or
>
> 2. Disorientation to time and place; or
>
> 3. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>
> 4. Perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking); or
>
> 5. Disturbance in personality (e.g., apathy, hostility); or
>
> 6. Disturbance in mood (e.g., mania, depression); or
>
> 7. Emotional lability (e.g., sudden crying); or
>
> 8. Impairment of impulse control (e.g., disinhibited social behavior, explosive temper outbursts); or
>
> 9. Impairment of cognitive function, as measured by clinically timely standardized psychological testing; or
>
> 10. Disturbance of concentration, attention, or judgment;
>
> And

REPORT AND RECOMMENDATION - 16

B. Select the appropriate age group to evaluate the severity of the impairment:

. . .

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02.

The undersigned agrees the ALJ erred by not considering whether plaintiff had a mental impairment that met the criteria of Listing 112.02, but disagrees that the evidence in the record necessarily supports a finding that they in fact were met. Although, as pointed out by plaintiff, that evidence does indicate plaintiff was noted to have difficulties in many of the above areas of functioning (see Tr. 13-14, 29-50, 52, 54-60, 277-78, 385, 393, 395, 416-50) it is not at all clear the ALJ would be required to find the existence of such difficulties credible. Thus, for example, while Dr. Penn completed a check-box form in late January 2008, essentially determining that plaintiff met the criteria of Listing 112.02 (Tr. 13-14), he did not point to any specific objective

REPORT AND RECOMMENDATION - 17

clinical findings to support that determination.[7]  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings or record as whole).

Indeed, the only evidence Dr. Penn pointed to as support for this disability determination consisted of the following references: "[p]ersonal contact," "Chidrens Hospital psych + physical findings" and "testing". Tr. 14.  An earlier letter from Dr. Penn describing additional functional limitations relies solely on general statements regarding the same, rather than citation to specific clinical records. See Tr. 31.  Other medical source opinions in the record also noting significant mental functional limitations, similarly lack much in the way of supporting clinical findings. See, e.g., Tr. 29-30 (relying on general statements of plaintiff's presentation over time, rather than on specific treatment records (see also Tr. 376, 378)); Tr. 33 (same); Tr. 385 (also noting little in way of medical history or other, objective clinical evidence to support finding of development and speech delay).  This is not to say the ALJ would not be able to base a finding of disability at step three on this evidence, but merely that remand for consideration thereof is warranted to allow the ALJ to make such a determination at the first instance.

VII.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

---

[7] The Court also notes that contrary to the other documents discussed previously that plaintiff's counsel faxed and submitted to the ALJ and Appeals Counsel respectively, this check-box form appears to be new, additional evidence submitted for the first time to the Appeals Council.  As such, the ALJ never had the opportunity to review it, and therefore cannot be faulted for not considering it.   In addition, given that the form was submitted for the first time to the Appeals Council, and no explanation has been provided as to why it could not have been provided earlier to the ALJ before he issued his decision, there is a question as to whether this matter may be remanded on the basis of that additional evidence. See Mayes v. Massanari, 276 F.3d 453, 461 n.3 (9th Cir. 2001) (expressly holding it had not decided whether good cause is required to review additional evidence submitted for first time to Appeals Council, or whether good cause is required only when such evidence is submitted for first time to district court).  Nevertheless, because defendant has offered no objection to the Court considering this additional evidence in deciding whether to remand this matter for further administrative proceedings, the undersigned shall do so.

REPORT AND RECOMMENDATION - 18

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

    A.    <u>Plaintiff's Mother</u>

As noted above, plaintiff's mother, Michele Hulbert, testified at the hearing in regard to

what she observed as to his symptoms and limitations. See Tr. 413-39.  The ALJ addressed her

testimony as follows:

> . . . At the hearing, Mrs. Hulbert testified that the claimant was able to try out
> jobs through the Visions Program.  The claimant was currently in the AIMS
> program, which was designed for children with special needs that were not
> ready to leave home.  The claimant had problems counting money.  Ms.
> Hulbert wrote the e-mails the claimant wanted to send to his friend.  The
> claimant had social anxiety.  The claimant needed reminders to brush his
> teeth.  He could not do food preparation.  The claimant was afraid of the
> stove.  He always had someone with him because he could easily be taken
> advantage of.  The claimant did not drive because the time someone pulled in
> front of him, he froze.  The claimant would lose interest in tasks.  The
> claimant got anxious when he could not finish something he liked.
>
> Although Mrs. Hulbert stated that the claimant was being treated for social
> anxiety, there is little, if any, documentation to support this allegation.
> Although the claimant may have had developmental delays, his I.Q. scores in
> 2001 were in the average range.  Although Mrs. Hulbert testified that the
> claimant had difficulty counting money, his test scores indicated average I.Q.
> and above average achievement levels in math.  Although the claimant might
> be "easily taken advantage of," that would not necessarily be a barrier to
> employment.  Although the claimant might be afraid of driving and using the
> stove, these fears would not be a barrier to employment.  Unless restricted
> daily activities are shown to be due to a specific medically determinable
> impairment, little weight is given to such a factor.  I give little weight to Mrs.
> Hulbert's statements.

REPORT AND RECOMMENDATION - 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Tr. 73.  Plaintiff argues these are not valid reasons for rejecting the testimony of his mother.  The undersigned disagrees.  As noted above, that there are few, if any, records of treatment for social anxiety directly contradicts the testimony of plaintiff's mother that such treatment occurred.  It also was reasonable for the ALJ to rely on the evidence of average I.Q. scores and above average achievement levels in math in the record to call into question her assertion that it was difficult for plaintiff to count change, as well as any implied assertion she made that any development delays he may have had, adversely impact his ability to function.

In addition, the ALJ was not remiss in discounting the testimony of plaintiff's mother on the basis that potential vulnerability to being taken advantage of does not necessarily translate into a barrier to employment.  The same certainly can be said with respect to plaintiff's alleged fear of using the stove (given that the vocational expert did not identify any job plaintiff could perform requiring the use thereof (see Tr. 452)) and driving (given the same).  Plaintiff argues that while this is true, that testimony shows how limited he is, asserting that most individuals can perform these tasks by the time they reach the age of 21.  But the point here is that limitations in functioning are relevant here only to the extent they bear on the ability to work.

The undersigned agrees with plaintiff that the last reason the ALJ gave for discounting his mother's testimony – that for restricted daily activities to be given weight, they must result from a specific medically determinable impairment – is not valid.  As discussed above, there is evidence in the record that plaintiff may have a genetic disorder, which possibly could have an impact on any or all of the above-noted activities.  Also as discussed above, the ALJ erred by failing to discuss that evidence in his decision.  Because of that error, it is not at all clear that none of the activities identified by plaintiff's mother were caused by a medically determinable impairment.  Nevertheless, this one error does not detract from the several other valid reasons the

REPORT AND RECOMMENDATION - 20

1   ALJ did give for discounting the credibility of her testimony.

2          B.      Plaintiff's Father

3          Plaintiff's father also provided testimony at the hearing concerning his observations of

4   plaintiff's symptoms and limitations. Tr. 440-50.  In regard to that testimony, the ALJ stated:

5
6          At the hearing, Mr. Hulbert testified that the claimant could not work in public
           or with co-workers.  The claimant would not ask questions when he did not
7          understand.  The claimant had problems learning new things.  He did not
           process the things other people did.  The claimant did not do well with
8          change.  Mr. Hulbert would not hire him.  The claimant would be difficult to
           employ.
9
           Although Mr. Hulbert testified that the claimant had difficulty learning new
10         things, the claimant's I.Q. scores and achievement test scores do not support
           this allegation.  Although the claimant may have difficulty dealing with
11         change, there is little evidence of a medically determinable impairment that
           would cause such limitation.  Mr. Hulbert's statement that he would not hire
12         the claimant does not lead to a conclusion that there are no jobs in the national
           economy that the claimant could perform.  Although Mr. Hulbert stated that
13         the claimant would be difficult to employ, Mr. Hulbert is not a vocational
           expert.  I give little weight to Mr. Hulbert's testimony.
14

15  Tr. 73.  Plaintiff argues the ALJ failed to provide sufficient reasons for discounting the testimony
16  of his father.  In this instance, the undersigned agrees.

17         As with the testimony of plaintiff's mother, the ALJ properly questioned that of his father
18
19  regarding the alleged difficulty he had learning new things as being unsupported by both his I.Q.
20  and achievement test scores.  Also as with plaintiff's mother's testimony, though, the ALJ erred
21  in discounting the testimony of plaintiff's father on the basis of there being little evidence of a
22  medically determinable impairment that would cause plaintiff's alleged difficulties in dealing
23  with change, given the ALJ's error in evaluating the medical and other evidence in the record
24  indicating the possible presence of a genetically-based impairment.  In addition, while it is true
25  that plaintiff's father's testimony that he would not hire plaintiff does not alone provide a proper
26  basis for finding plaintiff to be disabled, it certainly is relevant lay witness evidence concerning

REPORT AND RECOMMENDATION - 21

plaintiff's observed symptoms and limitations.  The testimony of plaintiff's father must be read

in this context, and thus it matters not whether he is a vocational expert.

VIII.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues remain in regard to the evidence in the record concerning both the nature and

existence of a genetically-based impairment, whether plaintiff has a mental impairment that

meets the criteria of Listing 112.02 and the testimony of plaintiff's father, this matter should be

remanded to the Commissioner for further administrative proceedings.  In addition, should the

Commissioner on remand determine that there are issues concerning plaintiff's insured status

REPORT AND RECOMMENDATION - 22

1   requiring further investigation, such investigation should be conducted as well.

2                                    CONCLUSION

3          Based on the foregoing discussion, the Court should find the ALJ improperly concluded

4   plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the

5   Commissioner for further administrative proceedings in accordance with the findings contained

6   herein.

7          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

8

9   72(b), the parties shall have ten (10) days from service of this Report and Recommendation to

10  file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in

11  a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).

12  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this

13  matter for consideration on **April 16, 2010**, as noted in the caption.

14         DATED this 16th day of March, 2010.

15

16

17

18                                              Karen L. Strombom
19                                              United States Magistrate Judge

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 23